IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOHN A. CUNNINGHAM, #366101    *

    Plaintiff,
v.    *    CIVIL ACTION NO. ELH-12-1189

CORIZON. INC.  F/K/A    *
CORRECTIONAL MEDICAL SERVICES,
 INC.    *

    Defendant.    *

    ***

MEMORANDUM OPINION

On April 17, 2012, John A. Cunningham, currently an inmate at the Metropolitan Transitional Center ("MTC"), filed a civil rights complaint against the private medical contractor, Corizon, Inc. ("Corizon"), seeking compensatory damages.[1]  Cunningham, who is self-represented, complains about the medical care he received while he was incarcerated at the Maryland Correctional Institution–Hagerstown ("MCIH").  Among other things, he asserts that an MRI and a nerve conduction study were prescribed and are medically necessary to assess and treat a chronic problem of numbness, tingling, and swelling of both hands, about which he first complained on September 30, 2011, but Corizon has refused to approve these diagnostic tests. ECF 15.  He also alleges that Kevin McDonald, a physician's assistant, was "negligent" in prescribing the wrong medication for plaintiff, which caused an adverse reaction.  *Id.*  Further, Cunningham asserts that, since his transfer to MTC, he continues to suffer from the same symptoms, yet the MTC staff has inadequately addressed the problem.  Plaintiff seeks monetary compensation "for partial loss of strength and mobility in both hands" and for "pain and

---

[1] Corizon was formerly known as Correctional Medical Services, Inc.

suffering due to misdiagnosis for prescribing [the] wrong medication[.]" *Id*.

Corizon has filed a motion to dismiss or, in the alternative, a motion for summary judgment ("Motion"). *See* ECF 12. Plaintiff's medical records are appended as an exhibit.[2] The Motion is supported by an exhibit of 46 pages, consisting of plaintiff's medical records dating from September 30, 2011. The Court has construed correspondence from plaintiff as his opposition to the Motion. *See* ECF 14, 15, 16, 17, 18, 19.[3]

## Standard of Review

The purpose of a motion to dismiss filed pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint. *See McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010); *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006). A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 n. 3, (2007). That showing must consist of more than "'a formulaic recitation

---

[2] The medical records, consisting of 46 pages, are attached collectively as defendant's Exhibit 3. However, each specific page is identified by defendant as a separate exhibit, in lieu of a page number. I will refer to defendant's individual exhibit numbers, which correspond generally to page numbers.

[3] In accordance with *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), plaintiff was informed of his right to file a response to the Motion, as well as a right to file affidavits, declara-tions, and other materials. *See* ECF 13. On October 22, 2012, Cunningham filed a letter with the Court complaining of outgoing mail tampering involving his letters and the denial of access to the court. ECF 19. As this is the sixth letter received from Cunningham since August 28, 2012. As noted, the court has considered the prior letters as opposition responses. Moreover, Cunningham does not specifically indicate how or if the "held up" letters differ from the correspondence previously received by the court, or the prejudice he has experienced. Therefore, the court finds no Fourteenth Amendment claim affecting the outcome of this case.

of the elements of a cause of action'" or "'naked assertion[s] 'devoid' of further factual enhancement.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 555, 557).

In connection with a motion to dismiss, the court must consider as true all well pleaded allegations in the complaint, *Albright v. Oliver,* 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Brockington v. Boykins,* 637 F.3d 503, 505-06 (4th Cir. 2007); *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993)). Moreover, because Cunningham is self-represented, his submissions are liberally construed. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007).

In evaluating the complaint, however, the court need not accept unsupported legal allegations. *Revene v. Charles Cnty. Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989). Nor must it agree with legal conclusions couched as factual allegations, *Iqbal*, 556 U.S. at 678, or conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters v. Hirst,* 604 F.2d 844, 847 (4th Cir. 1979); *see Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] ... that the pleader is entitled to relief.'" *Iqbal,* 56 U.S. at 679 (quoting Fed. R .Civ. P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will...be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th

Cir. 2007). However, Rule 12(d) permits a court, in its discretion, to consider matters outside of the pleadings on a motion under Rule 12(b)(6). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *See Finley Lines Joint Protective Board, Unit 200 v. Norfolk Southern Corporation*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). However, such discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

This Court deems it appropriate to consider the medical records submitted by the defendant, as they are likely to facilitate disposition of this case. Notably, plaintiff has had adequate notice of the possibility of conversion to summary judgment, has not filed an affidavit under Rule 56(d), and has not indicated that further discovery is necessary. *See Laughlin v.*

*Metro Wash. Airports Authority*, 149 F.3d 253, 261 (4th Cir. 1998); *Roseboro*, 528 F.2d at 310.[4] Therefore, defendant's Motion shall be treated as a motion for summary judgment.

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is properly granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be *no genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)),

---

[4] If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party who fails to file a Rule 56(d) affidavit does so at his peril, because "'the failure to file an affidavit ... is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods Ltd. v. Sixty Internet Domain Names,* 302 F.3d 214, 244 (4th Cir. 2002) (citations omitted). But, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d) ] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted).

*cert. denied*, 541 U.S. 1042 (2004). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In resolving a summary judgment motion, this court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Dennis v. Columbia Colleton Medical Center, Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). Again, because plaintiff is self-represented, his submissions are liberally construed. *See Pardus*, 551 U.S. at 94. Nonetheless, the court must abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat,* 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Factual Summary**

Plaintiff is in his late 40's. On September 30, 2011, while at MCIH, he complained of swelling, numbness, and tingling to both hands.[5] He was seen on that date by a registered nurse, Christine McLaughlin. Exhibits 1-2. On that same date, he received an X-ray of his cervical spine. Exhibits 3-4. The X-ray was read on October 4, 2011, and revealed no evidence of fracture, dislocation, or subluxation. However, it showed degenerative changes at C4-C5. Exhibit 4.

---

[5] Plaintiff apparently was involved in a motor vehicle accident in 2009, in which he sustained a "whiplash injury" and an injury to his back. Exhibits 1 to 10.

On October 12, 2011, Cunningham was seen by Asresahegn Getachew, M.D., who noted muscle spasm in the cervical spine and "mildly reduced ROM," i.e., range of motion. Exhibits 5-6. He was prescribed Baclofen, to relieve muscle spasms, and Indomethacin, to reduce pain, swelling, and stiffening of joints. *Id.* Plaintiff claims that, after two days of taking the medication, he experienced "significant swelling in both hands" and continuing numbness. ECF 1.

On October 25, 2011, Cunningham was treated by Kevin McDonald, a Physician's Assistant, to whom he reported "swelling of both hands after starting indomethacin." Exhibit 7. Plaintiff also reported a 2009 motor vehicle accident and a resulting "'whiplash' injury," and recent numbness and tingling in his hands. *Id.* Plaintiff's examination revealed swelling in both hands in addition to a bilateral decrease in grip strength. Exhibits 7-9. McDonald discontinued the Indomethacin and prescribed Prednisone. Exhibits 8, 10. McDonald also requested an "MRI of cervical spine," noting that plantiff was "symptomatic" for cervical disc degeneration. Exhibit 7. Although McDonald discontinued the Indomethacin, the swelling has persisted, according to plaintiff.

On October 26, 2011, plaintiff was treated by RN Kimberly Longo. Exhibit 5, 11-12. Then, on October 27, 2011, Cunningham was presented to "UM" for an MRI of the cervical spine. However, this was changed to a physical therapy evaluation to determine if it would be of any clinical benefit in light of plaintiff's symptoms. Exhibit 13. According to Corizon, Wexford

Utilization Management ("Wexford"), not Corizon, makes the final decision regarding a patient's care. ECF 12 at 2-3.[6]

Three days later, on October 30, 2011, plaintiff was seen by Colin Ottey, M.D., who noted Cunningham's hand swelling and erythema.[7] Plaintiff also complained of numbness and tingling. Exhibits 14-16.

On November 7, 2011, plaintiff was seen by Richard Sampong, a physician's assistant, who found that plaintiff was non-compliant with his medications. Exhibit 17. Plaintiff attributed the swelling in his hands to Baclofen. The potential benefits of the medication were discussed with plaintiff, along with side effects. *Id*. Plaintiff continued to request an "MRI of his hand," and declined to take his medications. *Id*.

Plaintiff underwent a physical therapy evaluation on November 8, 2011. Exhibits 18-26. Despite plaintiff's complaints of bilateral numbness in his hands, no swelling was noted. Exhibit 18.

On November 10, 2011, plaintiff began his physical therapy sessions. Exhibit 18. Plaintiff also underwent physical therapy on November 15, 17, 22, and 29, 2011, as well as on December 1 and 6, 2011. Exhibits 19-26. Plaintiff claimed, however, that his condition remained "pretty much the same," Exhibit 25, and the "PT intervention has not helped" his hands. Exhibit 26.

---

[6] Defendant states that to the extent the plaintiff complains that he was denied a recommended MRI of the cervical spine and a nerve conduction study, it is not responsible as these treatments were disapproved by Wexford. *Id*.

[7] Erythema is a skin condition characterized by redness or rash. *See* www.umm.edu/altmed/articles/erythema.

Plaintiff was transferred to MTC on January 20, 2012. Exhibit 27. At MTC, plaintiff filed sick-call forms complaining of dental moldings, a "parcel" plate involving his teeth, and the need for a dental filling. Exhibits 29-30. On January 30, 2012, he was seen by a registered nurse for a "dietary physical." Exhibit 32.

Plaintiff's medical records also reflect that he was treated on March 2, 2012, for a chemical burn to his left arm that he sustained from cleaning the oven while working in the kitchen. Exhibits 33-34. At that time, he did not complain of the symptoms at issue here.

It was not until March 3, 2012, that plaintiff again raised a claim about persistent numbness and swelling in his hands, by submitting a "sick-call request." Exhibit 31. He was seen by a physician's assistant on March 5, 2012. Exhibit 35. The summary noted, among other things, Cunningham's neuopathy, history of physical therapy, treatment with anti-inflammatory medications, and a diagnosis of severe carpal tunnel syndrome. Exhibits 35-36. Based on plaintiff's complaint of numbness and tingling in his hands, plaintiff was given wrist braces and Naprosyn[8] and was scheduled for a follow-up appointment. *Id*. Several lab tests were also ordered. On March 9, 2012, plaintiff was seen by a Physician's Assistant to discuss the test results. Exhibit 37.

---

[8] Naprosyn (Naproxen) is a nonsteroidal anti-inflammatory drugs ("NSAIDs"). It works by reducing hormones that cause inflammation and pain in the body. S*ee* www.drugs.com/naprosyn.html.

On April 3, 2012, plaintiff was seen by Michael Agonafir, M.D., for a sports-related injury to his left little finger. An X-ray showed a dislocation of the left little finger. Exhibits 38-41. Improvement to his carpal tunnel syndrome was noted. Exhibit 39.

Plaintiff was treated by a registered nurse on May 4, 2012, for a first-degree burn to his hand, sustained while working in the kitchen. Exhibits 42-44. Then, on May 22, 2012, he was evaluated by a registered nurse for chest pain, which was assessed as related to his back pain. Exhibits 45-46. On these two occasions, he did not complain about the symptoms in issue. Notably, defendant points out that, despite his complaints about his hands, plaintiff was able to work and engage in recreational sports.

In plaintiff's correspondence to the Court, construed as his opposition, Cunningham cites to the Maryland rules to elect a jury trial. He reiterates the claims of hand numbness and tingling and his severe, adverse reaction to the Indomethacin. ECF 14, 15. He also accuses Corizon (and staff) of medical malpractice and claims that he continues to suffer from pain. Further, Cunningham contends that although he was provided physical therapy, it did not improve his condition. He complains that although health care personnel recommended an MRI and nerve conduction "surgery," the tests were not conducted.

## Discussion

It is well settled law that a claimant may not recover against a municipality on a *respondeat superior* theory under 42 U.S.C. § 1983. *See Monell v. Dep't of Social Services,* 436 U.S. 658, 690-695 (1978). Principles of municipal liability under § 1983 apply equally to a private corporation, such as Corizon. Therefore, a private corporation is not liable under § 1983 for actions allegedly committed by its employees when such liability is predicated solely upon a

theory of *respondeat superior*. *See Austin v. Paramount Parks, Inc.,* 195 F.3d 715, 727-28 (4th Cir. 1999); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982).

To be sure, the government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S.294, 297 (1991)).

To state a claim under 42 U.S.C. § 1983 based on an Eighth Amendment allegation of denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to an inmate's serious medical needs. *See Gamble*, 429 U.S. at 106; *see also Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (citing *Henderson v. Sheahan,* 196 F.3d 839, 846 (7th Cir. 1999)). *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the

needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Actual knowledge or awareness on the part of the alleged inflicter…becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995) (quoting *Farmer,* 511 U.S. at 844).

If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2001) (citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998)) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken). As the Fourth Circuit has said: "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997).

The Court does not suggest here that plaintiff is not entitled to medical treatment for his medical conditions. Indeed, the MRI and nerve conduction study may be desirable, given the prolonged and documented complaints. The right to treatment, however, is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely *desirable*." *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977) (emphasis added). Inmates do not have a constitutional right to the treatment of their choice. *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986). Moreover, disagreements between medical staff and an inmate over the necessity for or extent of medical treatment do not rise to a constitutional injury. *See Estelle*, 429 U.S. at 105-

06; *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *see also Fleming v. LeFevere*, 423 F.Supp.2d 1064, 1070-71 (C.D. Cal. 2006).

Here, plaintiff's medical records show that Cunningham was seen repeatedly by doctors, registered nurses, and physician's assistants for his claims of hand tingling and numbness. Anti-inflammatory medications were prescribed to him for the purpose of relieving the symptoms of which he complained. Once he informed medical personnel of the swelling he believed was caused by the medication, he was immediately prescribed an alternative medication. Further, Cunningham received x-rays of the cervical spine, physical therapy, and treatment for carpal tunnel syndrome. He has offered no proof that he has not been provided adequate medical treatment, nor has he shown deliberate indifference on the part of the defendant. *See Estelle,* 429 U.S. at 104 (stating that prison officials evince deliberate indifference to a serious medical need by completely failing to consider an inmate's complaints or by acting intentionally to delay or deny the prisoner access to adequate medical care); *Miltier v. Beorn,* 896 F.2d 848, 851 (4th Cir. 1990) (noting that deliberate indifference may be demonstrated by actual intent or reckless disregard but that mere negligence or medical malpractice does not suffice).

Plaintiff's contention as to the medication prescribed to him would, at most, amount to a claim of medical malpractice. Such a claim is not cognizable under 42 U.S.C. § 1983, and the court declines to exercise supplemental jurisdiction to examine this tort claim.[9]

---

[9] Under Maryland law, a claim of medical malpractice may proceed only after review before the Maryland Health Claims Arbitration Board. *See* Md. Code, Cts & Jud. Proc., § 3-2A-01 et seq.; *see also Carroll v. Konits*, 400 Md. 167, 172, 929 A.2d 19, 22 (2007); *Davison v. Sinai Hospital of Balt. Inc.*, 462 F.Supp.778, 779-81 (D. Md. 1978). There is no demonstration that plaintiff has sought or completed such review. This Court dismisses any such claims, continued

For the aforementioned reasons, the complaint against defendant shall be dismissed. Corizon's motion to dismiss or in the alternative, motion for summary judgment, treated as one for summary judgment, shall be granted.


Date: <u>October 26, 2012</u>                    /s/ _____
                                                 Ellen L. Hollander
                                                 United States District Judge

---

without prejudice. *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).